UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
THE PRESBYTERIAN CHURCH OF SUDAN, REV.  :
MATTHEW MATHIAN DEANG, REV. JAMES KOUNG :
NINREW, NUER COMMUNITY DEVELOPMENT      :
SERVICES IN U.S.A., FATUMA NYAWANG      :    01 Civ. 9882 (DLC)
GARBANG, NYOT TOT RIETH, individually   :
and on behalf on the Estate of her      :    OPINION AND ORDER
husband JOSEPH THIET MAKUAC, STEPHEN    :
HOTH, STEPHEN KUINA, CHIEF TUNGUAR      :
KUEIGWONG RAT, LUKA AYUOL YOL, THOMAS   :
MALUAL KAP, PUOK BOL MUT, CHIEF PATAI   :
TUT, CHIEF PETER RING PATAI, CHIEF      :
GATLUAK CHIEK JANG, YIEN NYINAR RIEK,   :
and MORIS BOL MAJOK, and on behalf of   :
all others similarly situated,          :
                                        :
                    Plaintiffs,         :
                                        :
          -v-                           :
                                        :
TALISMAN ENERGY, INC., and REPUBLIC OF  :
THE SUDAN,                              :
                                        :
                    Defendants.         :
                                        :
----------------------------------------X


Appearances:


For the Plaintiffs:

Lawrence Kill
John M. O'Connor
Linda Gerstel
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York  10020

Carey R. D'Avino
Stephen A. Whinston
Keino R. Robinson
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103

Steven E. Fineman
Rachel Geman
Daniel E. Seltz
Lieff, Cabraser, Heimann &
Bernstein, LLP
780 Third Aveune, 48th Floor
New York, New York  10017

Elizabeth J. Cabraser
Richard M. Heimann
Bill Lann Lee
Lieff, Cabraser, Heimann &
Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, California  94111


For Defendant Talisman Energy, Inc.:

Joseph P. Cyr
Marc J. Gottridge
Scott W. Reynolds
Darcy L. O'Loughlin
Lovells
900 Third Avenue
New York, New York  10022

DENISE COTE, District Judge:

The plaintiffs are current and former residents of southern Sudan who allege, pursuant to the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), that they were victims of genocide, crimes against humanity, and other violations of international law perpetrated by the Government of Sudan ("Sudan") and a Canadian energy company, Talisman Energy, Inc. ("Talisman").  An Opinion of June 13, 2005 (the "Opinion") denied a Talisman motion for judgment on the pleadings.  See Presbyterian Church of Sudan v. Talisman Energy, Inc., 374 F. Supp. 2d 331 (S.D.N.Y. 2005).  Pursuant to 28 U.S.C. § 1292(b), Talisman now moves to certify for interlocutory appeal the issues addressed in the Opinion.  For

the following reasons, Talisman's motion is denied.

## BACKGROUND

Only relevant facts are summarized here, although more detailed recitations of the allegations and history of this litigation appear in prior Opinions, familiarity with which is assumed.[1]  The Opinion addressed Talisman's argument that the Supreme Court's decision in Sosa v. Alvarez-Machain, 124 S. Ct. 2739 (2004), and the Second Circuit's decision in Flores v. Southern Peru Copper Corp., 414 F.3d 233 (2d Cir. 2003),[2] had so changed the landscape of law governing ATS lawsuits that a 2003 Opinion addressing Talisman's motion to dismiss, Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289 (S.D.N.Y. 2003), was clearly erroneous.  Talisman contended that

_____

[1]  For additional background in addition to the Opinion, see Presbyterian Church of Sudan v. Talisman Energy, Inc., No. 01 Civ. 9882 (DLC), 2005 WL 1060353 (S.D.N.Y. May 6, 2005) (resolving issues surrounding certain plaintiffs' standing to sue); Presbyterian Church of Sudan v. Talisman Energy, Inc., 226 F.R.D. 456, 458-65 (S.D.N.Y. 2005) (comprehensive discussion of facts in context of motion for class certification); Presbyterian Church of Sudan v. Talisman Energy, Inc., No. 01 Civ. 9882 (DLC), 2004 WL 1920978 (S.D.N.Y. Aug. 27, 2004) (denying Talisman's second motion to dismiss); Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F. Supp. 2d 289 (S.D.N.Y. 2003) ("2003 Opinion") (denying Talisman's first motion to dismiss); Presbyterian Church of Sudan v. Talisman Energy, Inc., No. 01 Civ. 9882 (AGS), 2003 WL 1342532 (S.D.N.Y. Mar. 18, 2003) (addressing Sudan's failure to appear).

[2]  The opinion originally cited by Talisman in connection with its motion for judgment on the pleadings, Flores v. Southern Peru Copper Corp., 343 F.3d 140 (2d Cir. 2003), was later republished and cited by the Opinion at Flores v. Southern Peru Copper Corp., 406 F.3d 65 (2d Cir. 2003).  Flores has since been republished for a second time at Flores v. Southern Peru Copper Corp., 414 F.3d 233 (2d Cir. 2003).

under <u>Alvarez-Machain</u> and <u>Flores</u>, there was insufficient evidence
in international law for the existence of corporate liability and
secondary liability, such as aiding and abetting, and that those
concepts were not sufficiently definite and accepted in
international law to support an ATS claim. <u>Presbyterian Church</u>,
374 F. Supp. 2d at 334-35. The Opinion rejected both of these
arguments, holding that secondary liability and corporate
liability are sufficiently recognized in customary international
law after <u>Alvarez-Machain</u> and <u>Flores</u> to support a claim under the
ATS. <u>Id.</u> at 337, 341.

## DISCUSSION

Section 1292 is "a rare exception to the final judgment rule
that generally prohibits piecemeal appeals." <u>Koehler v. Bank of
Bermuda Ltd.</u>, 101 F.3d 863, 865 (2d Cir. 1996). <u>See also</u> <u>In re
WorldCom, Inc. Sec. Litig.</u>, No. 02 Civ. 3288 (DLC), 2003 WL
22953644 (S.D.N.Y. Dec. 16, 2003). Section 1292(b) provides that

> When a district judge, in making in a civil action an
> order not otherwise appealable under this section,
> shall be of the opinion that such order involves a
> <u>controlling question of law as to which there is
> substantial ground for difference of opinion and that
> an</u> immediate <u>appeal</u> from the order <u>may materially
> advance the ultimate termination of the litigation</u>, he
> shall so state in writing in such order. The Court of
> Appeals which would have jurisdiction of an appeal of
> such action may thereupon, in its discretion, permit an
> appeal to be taken from such order, if application is
> made to it within ten days after the entry of the
> order.

28 U.S.C. § 1292(b) (emphasis supplied). Section 1292(b)
certification should be "strictly limited because only

exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted). Section 1292 is to be "reserved for those cases where an intermediate appeal may avoid protracted litigation." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996). While a question of law is clearly controlling if a reversal of the district court's order would terminate the action, an issue can be "controlling" even if it would not necessarily result in the termination of the action. Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990). Although a question of law need not affect a wide range of pending cases to be considered "controlling," a court may consider issues of docket congestion and "system-wide costs and benefits of allowing the appeal." Id. Section 1292(b) is to be narrowly construed, however, and "must be strictly limited to the precise conditions stated in the law." Id. at 25 (citation omitted).

The Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification." Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp., 964 F.2d 85, 89 (2d Cir. 1992). For example, an issue of "first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Flor, 79 F.3d at 284. A district court must analyze the strength of the arguments before deciding that there is a substantial ground for dispute.

<u>Id.</u>  At the same time, one of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases.  <u>See</u> <u>In re Lloyd's</u> <u>Am. Trust Fund Litig.</u>, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).  In "so-called 'big' cases," courts may grant certification more freely, while remaining attuned to the inefficiency of having the Court of Appeals hear numerous appeals in the same case.  <u>Id.</u>

<u>Secondary Liability</u>

The plaintiffs allege that Talisman is responsible for violations of the law of nations as a principal, as well as through theories of secondary liability such as aiding and abetting.  The Second Amended Complaint ("Complaint") is laden with allegations that Talisman and the Government of Sudan "willfully participated in a campaign of ethnic cleansing, including extrajudicial killing, war crimes, forcible displacement, military bombings and assaults on civilian targets, confiscation and destruction of property, kidnapping, rape and enslavement against the non-Muslim, African Sudanese population living in and near the oil concession areas."  The Complaint alleges that "Talisman and the Government worked together to devise a plan for the security of the oil fields," that Talisman "hired its own military advisors to coordinate military strategy with the Government," and that there were regular "meetings involving Talisman, Army intelligence, and the Ministry of Energy

and Mining where Talisman would map out areas intended for exploration and they would discuss how to dispose of civilians in those areas." Because the plaintiffs have alleged that Talisman is directly liable for violations of international law, a reversal of the Opinion's holding that international law provides for secondary liability would not terminate the litigation or even significantly impact its course.[3]

Even if it were appropriate to analyze issues of docket congestion and system-wide costs and benefits in the absence of a controlling question, certification of the secondary liability issue could yield an appellate opinion potentially affecting just two sets of pending ATS cases in the district courts of this Circuit, and providing persuasive authority for three ATS cases elsewhere in the United States.[4] Even for these cases it is unclear what efficiencies would accrue in the event of an appellate ruling on secondary liability. As the example of this case shows, an appellate ruling may have negligible impact if the

---

[3] For this reason, reversal on the issue of secondary liability also would not, as Talisman argues, deprive this Court of subject matter jurisdiction. Cf. Klinghoffer, 921 F.2d at 24; Cromer Fin. Ltd. v. Berger, Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC), 2001 WL 935475, at *2 (S.D.N.Y. Aug. 16, 2001).

[4] As identified by Talisman, these cases are: Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386 (KMW) (S.D.N.Y.); Wiwa v. Shell Petroleum Dev. Co. of Nigeria Ltd., No. 04 Civ. 2665 (KMW) (S.D.N.Y.); Kiobel v. Royal Dutch Petroleum Co., No. 02 Civ. 7618 (KMW) (S.D.N.Y.); In re Terrorist Attacks on September 11, 2001, No. 03 MDL 1570 (RCC) (S.D.N.Y.); Bowoto v. Chevron Corp., No. 99 Civ. 2506 (N.D. Cal.); Mujica v. Occidental Petroleum Corp., No. 03 Civ. 2860 (C.D. Cal.); and Bauman v. DaimlerChrysler Corp., No. 04 Civ. 194 (N.D. Cal.).

ATS case also involves allegations of direct liability.[5]  In any event, because ATS cases with secondary liability claims are filed infrequently, as the number of pending cases indicates, this is not an issue of law where "[t]he answer will determine whether scores of lawsuits are properly before this Court."  In re WorldCom, 2003 WL 22953644, at *5.  Under these circumstances, certification of the issue of secondary liability in international law is not appropriate.

Corporate Liability

    The issue of corporate liability is a controlling question, but there is not a substantial ground for a difference of opinion on the issue.  The Opinion observed that the Supreme Court has explicitly contemplated corporate liability under international law in ATS cases, and that the Second Circuit, despite confronting numerous ATS cases naming corporations as defendants, has never held that it lacked subject matter jurisdiction because of a defendant's status as a corporation.  Presbyterian Church, 374 F. Supp. 2d at 335-36.  The Opinion also noted compelling State practice as indicated by the fact that despite frequent

---

        [5]  To the extent the judicial system needs an appellate ruling, the Ninth Circuit has already endorsed the principle, Doe I v. Unocal Corp., 395 F.3d 932, 951 (9th Cir. 2002), reh'g en banc granted by 395 F.3d 978 (9th Cir. 2003), and Talisman predicts that the pending appeal in the Second Circuit from In re South African Apartheid Litig., 346 F. Supp. 2d 538 (S.D.N.Y. 2004), "certainly will raise the secondary liability issue," and opines that the appeal from In re Agent Orange Prod. Liab. Litig., 373 F. Supp. 2d 7 (E.D.N.Y. 2005), may also present the issue.

State protests to district courts in ATS cases implicating their own nationals, no State appears ever to have "objected to the exercise of jurisdiction over one of its national corporations based on the principle that it is not a violation of international law for corporations to commit or aid in the commission of genocide or other similar atrocities." Id. at 337. When combined with the evidence marshaled in the 2003 Opinion, see Presbyterian Church, 244 F. Supp. 2d at 308-19, this authority indicates that there is no substantial ground for difference of opinion on the issue of whether corporate liability is sufficiently recognized in customary international law to support an ATS claim.

This is Talisman's second attempt to certify the question of corporate liability in international law for interlocutory appeal, the first attempt having been denied on June 13, 2003 following the 2003 Opinion. Talisman cites two pieces of evidence to support its renewed argument that there is a substantial ground for difference of opinion on this question. First, it notes that during the debates concerning the Rome Statute of the International Criminal Court, United Nations Diplomatic Conference of Plenipotentiaries on the Establishment of an International Criminal Court, July 17, 1998, U.N. Doc. A/CONF.183/9 (1998) ("Rome Statute"), a proposal was advanced, and subsequently rejected, that would give the International Criminal Court jurisdiction over juridical persons in addition to natural persons. Talisman contends that the proposal was

rejected because criminal liability for corporations does not exist in some countries, and there are thus no universally recognized common standards for corporate liability. As the Opinion noted, however, "it is not necessary for any given State to provide a domestic civil or criminal remedy for torture or genocide in order for the prohibitions on torture and genocide to retain their status as peremptory norms of international law." Presbyterian Church, 374 F. Supp. 2d at 336. The facts that certain States may provide for civil, but not criminal, liability for corporations, and that such differences may have led the drafters of the Rome Statute, which established a criminal court, to limit its scope to natural persons, does not compel the conclusion that corporations may not be held liable in any way for violations of customary international law. See In re Agent Orange, 373 F. Supp. 2d at 57 ("[L]imitations on criminal liability of corporations do not necessarily apply to civil liability of corporations."); see also Beth Stephens, Translating Filártiga: A Comparative and International Law Analysis of Domestic Remedies for International Human Rights Violations, 27 Yale J. Int'l L. 1, 45 (2002) (surveying classifications of offenses as torts and crimes in different States, noting that "[o]ver time and across borders, legal systems have made different judgments as to which set of sanctions to apply to which offenses," and that "[t]he categories do not translate directly into the legal languages of different legal systems because they reflect a series of policy choices that vary across

national borders"). Far more illuminating is the evidence that no State has protested the exercise of civil jurisdiction over corporations for genocide or similar violations of customary international law despite their protests on other grounds. In addition, Talisman has cited no cases, domestic or foreign, that have held that international law does not provide for liability for corporations.

Talisman's second argument is that comments by the Honorable Jack B. Weinstein in In re Agent Orange require the conclusion that there is a substantial ground for difference of opinion on the question of corporate liability in international law. In that case, Judge Weinstein observed that "[t]here is substantial support for [the] position" that corporations "cannot be held liable under international law." In re Agent Orange, 373 F. Supp. 2d at 54. Judge Weinstein carefully treated the defendants' objections to corporate liability before decisively rejecting them, surveying the Nuremberg Trials, id. at 57-58, noting that corporate liability under the ATS has been "widely recognized" in federal courts including the Supreme Court, id. at 58, and observing that international law does not provide immunity for corporations from civil legal action. Id. With the wide recognition in federal courts of the principle that customary international law provides for corporate liability in addition to the compelling State practice already described here and in prior Opinions, and with absolutely no precedent in Talisman's favor, the characterization in In re Agent Orange of

11

the contrary argument as having "substantial support" or "strength of authority" is not sufficient to conclude that there is substantial ground for difference of opinion on this question in the context of a Section 1292(b) analysis.

## CONCLUSION

Talisman's motion for certification for interlocutory appeal of the June 13, 2005 Opinion is denied.

SO ORDERED:

Dated:     New York, New York
           August 30, 2005

                                    _____
                                         DENISE COTE
                                  United States District Judge